**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 18-cv-60902-CMA**

ERIC LEMOINE and
TTC PERFORMANCE PRODUCTS, INC.,

    Plaintiffs,

vs.

MOSSBERG CORPORATION, and
O.F. MOSSBERG & SONS, INC.

    Defendants.

_____/

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE**
**ALTERNATIVE, TO TRANSFER VENUE, AND MEMORANDUM IN SUPPORT**

**I.     BACKGROUND**

On May 31, 2018, the Court held a telephonic conference regarding Defendants' motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction or improper venue. On that call Plaintiffs expressed their willingness to consent to transfer to the Middle District of Florida. However, as Defendants have previously argued, the Middle District is not an appropriate venue under 28 U.S.C. § 1400(b). Plaintiffs filed their Response [Doc. 30] to Defendants' Motion on June 13, 2018.

The current issues are 1) whether the Middle District of Florida is an appropriate venue, and 2) whether this Court can properly exercise personal jurisdiction over the Defendants in this case.

**II. VENUE**

Venue is not proper in the Middle District of Florida. Plaintiffs and Defendants agree that for patent infringement actions, 28 U.S.C. § 1400(b) is the sole statute that dictates whether venue is proper. *TC Heartland*, 137 S. Ct. 1514 (2017), at 1518 (Section 1400(b) "constitute[s] 'the exclusive provision controlling venue in patent infringement proceedings'" (quoting *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942)). Section 1400(b) provides that an action for patent infringement may be brought in the judicial district:

(1) where the defendant resides, or

(2) where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b).

Plaintiffs concede that Defendants do not reside in the Middle District for purposes of the venue statute [Doc. 30 at 10], and argue that venue in the Middle District is appropriate under section 1400(b)(2) based upon the existence of the Defendants' chairman's part-time residence in the district. [Doc. 30 at 10-11].

Accordingly, section 1400(b)(2) provides the appropriate standard for venue in this case. Section 1400(b)(2) contains two elements, both of which must be shown. First, the plaintiff must show that the defendant has committed acts of infringement within the district. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Second, the plaintiff must show that the defendant maintains a regular and established place of business within the district. *Id*. Assuming Plaintiffs' bare allegations that Defendants have committed acts of infringement in the Middle District are sufficient, Defendants nevertheless do not have a regular and established place of business in the Middle District.

### A. Defendants Do Not Have a Regular and Established Place of Business in This District

Plaintiffs incorrectly state that "Defendants admit all of the facts necessary for the Court to find that venue should be the Middle District of Florida. These admission [sic] satisfy the three pronged test of §1400(b) exactly as stated in the statute." [Doc. 30 at 10]. However, as Plaintiffs acknowledge, they must show that "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Id*. Plaintiffs allege that the presence of the Defendants' chairman's part-time home in the Middle District satisfies the requirement of a "regular and established place of business." In their response, Plaintiffs adopt the correct standard for this inquiry, but then Plaintiffs only make conclusory statements without applying the test and mischaracterize the case law.

Plaintiffs cite to *Cray* for the proposition that the statute "was intended to limit patent venue to forums in which the defendant's presence is permanent." [Doc. 30 at 10]. Defendants agree, and the application of the statute in *Cray* is carried out with that in mind. In that case, the presence of a "'sales executive' for approximately seven years with associated sales of Cray systems in excess of $345 million," who was held out by the defendant as a "Named Account Manager," operating from his "home office," who's employer internally identified such home address as his place of business, and provided his home telephone number (having a local area code) as his "office" telephone to customers, did ***not*** satisfy section 1400(b)(2). *Id.* at 1356. In particular while the defendant in *Cray* never paid for the use of the executive's home to operate its business, the executive did receive "reimbursement for his cell phone usage for business purposes, internet fees, and mileage or 'other costs' for business travel." *Id*.

In the present case, Defendants' chairman and retired CEO is paid by Defendants to lease a portion of his residence. Doc. 12-1 at 10. However, there is no indication that this fact is

3

dispositive. In fact, in *Cray*, the various reimbursed expenses, including for internet access, phone, and other costs, may well add up to an amount equivalent to the lease payments at issue in this case. However, it is difficult to see how a lease, especially one not granting Defendants access to the home office, but designed to merely compensate the chairman for his own use of it, amounts to something beyond any other reimbursement simply because the arrangement is called a lease.

The court in *Cray* also noted that, "the place of business must be 'regular.' A business may be 'regular,' for example, if it operates in a steady, uniform, orderly, and methodical manner. In other words, *sporadic activity cannot create venue*." *Id.* at 1357, *emphasis added*, *citing Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941) (internal quotations omitted). "Sporadic" is precisely the word that describes the Defendants' chairman's activity on their behalf. The home office is "for his use, *among other things*, *in performance of some of his duties as Chairman*. *Defendants do not control the premises* of the home office described above, *nor restrict the business that may be conducted there by their Chairman that is not related to Defendants*." (Doc. 12-1 at 10-11, *emphasis added*). Defendants' chairman is not involved in day-to-day operations and has no employees that directly report to him. Accordingly, the use of the home office on Defendants' behalf is sporadic and not "regular."

Importantly, there is no evidence that Defendants have any right to enter the premises, or to direct the activities that occur there. When work is done there on behalf of Defendants, it is intermittent and limited in scope and duration. Accordingly, Defendants do not have a "regular and established place of business" in the Middle District.

4

### B. No place in the Middle District is "the place of the defendant"

As with the second prong of the applicable test under section 1400(b)(2), no place in the Middle District satisfies the third prong requiring it to be "the place of the defendant." The *Cray* court, in its discussion interpreting the statutory language, further indicated that a lack of control of the premises weighs against it being considered "a place of the defendant." ("On the other hand, if an employee can move his or her home out of the district at his own instigation, without approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant." *Cray* at 1358. In the present case, Defendants' chairman may choose to change his residence at any time, without any notice to, or approval from, the Defendants.

In dicta, the *Cray* court stated that "[r]elevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id*. However, the existence of a lease is not dispositive, but, rather, is looked to for an indication of control of the place by the defendant. The chairman is not restricted in any way from relocating out of the district, and the limited work done by him on behalf of Defendants need not be performed in any particular location. The Defendants exercise no control, have no rights of entry or to sublet, or have any other "attributes of possession or control over the place."

The *Cray* court went on to state that, "[a]nother consideration might be whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at the place in the district so that they can be distributed or sold from that place." *Id*. The Defendants' chairman is, as previously stated, not required to reside in any particular place and could move at his own instigation. Further, he stores no materials or

products of Defendants for distribution or otherwise at his home. Accordingly, the chairman's home is not "the place of the defendant."

Accordingly, venue is not proper in the Middle District of Florida as no Defendant has a regular and established place of business in the district. This is because no location in the district is "regular and established," and because no location in the district is "the place of the defendant."

## III. PERSONAL JURISDICTION

Plaintiffs argue in their Response that Defendants are subject to personal jurisdiction in this Court based on a theory of specific jurisdiction. [Doc. 30 at 4]. To determine if a district court may exercise personal jurisdiction under a specific jurisdiction test, the Federal Circuit applies a three prong test considering "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Gelgard, LLC v. SK Innovation, Co., LTD.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015) (internal quotations omitted). Plaintiffs argue that Defendants' sales of allegedly infringing products to third parties in Florida, and the existence of a part-time residence of Defendants' chairman in the state combine to satisfy this test. Doc. 30 at 6.

### A. Defendants' Contacts

Plaintiffs argue that Defendants' sales of allegedly infringing products to third parties in Florida satisfy the requirements of the Florida long-arm statute based on Fla. Stat. § 48.193(1)(a)(2), which extends to cases for tortious acts committed in Florida or causing damage in Florida. [Doc. 30 at 6]. However, here in the Southern District of Florida, in a case filed by the same plaintiffs for infringement of the same patent, the court held that such alleged sales did not

create specific jurisdiction. *See*, *Lemoine, et al., v. Wong, et al.,* No. 17-cv-60099-UU (S.D. Fla, 2017), (Doc. 19, at 9) (holding that alleged patent infringement throughout the country, did not give rise to specific jurisdiction).

Additionally, the allegations of infringement cannot establish general jurisdiction. Here, as in the previous *Lemoine* case, "Plaintiffs fail to meet their burden of showing general personal jurisdiction… because Plaintiffs fail to rebut HBH's testimony that the company at no time engaged in 'substantial and not isolated' activity within Florida." *Id.* at 8. Defendants do not have the "substantial and not isolated contacts" required for general jurisdiction. Defendants have only had remote contacts with the State of Florida. With the exception of sales of its products to third parties in Florida, neither Defendant conducts business in the State of Florida. Doc. 12 at 8. Defendants do not design, manufacture, service, or repair any products in the State of Florida. *Id*. at 9. Defendants lease a home office located in the Middle District of Florida and owned by Defendants' retired CEO and current Chairman and located in his part-time, private residence for his use, among other things, in performance of some of his duties as Chairman. *Id*. at 10. Defendants do not control the premises of the home office, nor restrict the business that may be conducted there by their Chairman that is not related to the Defendants. *Id*. at 10. Defendants do not own or lease any other real property in the State of Florida. *Id*. at 12. Defendants do not have a bank account in the State of Florida and have never had a bank account in the State of Florida. *Id*. at 14.

Additionally, any documents related to the accused shotgun product that are in the possession, custody or control of Defendants or are likely to be relevant to the present lawsuit are located in North Haven, Connecticut, in the District of Connecticut. *Id*. at 15. There are no documents relevant to Plaintiffs' infringement accusations that are located in the State of Florida,

including in the Southern District of Florida. *Id*. at 16. Plaintiffs allege that, "Plaintiffs [sic] design documents, emails, correspondence, sales documents and witnesses are located in Florida." [Doc. 30 at 8]. However, in a patent infringement case, any such documents will be of little to no value in determining validity or infringement. Here, Defendants respectfully maintain that subjecting them to personal jurisdiction in this Court would violate the Due Process Clause of the Fourteenth Amendment. There are no meaningful contacts between either of the Defendants and Florida that could give rise to personal jurisdiction. In short, Defendants have no substantial contacts with the State of Florida and categorically no reason to anticipate being haled into court in this State. Plaintiffs' Complaint should be dismissed because this Court lacks personal jurisdiction over either Defendant.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the pending motion to dismiss or transfer for improper venue and, should this Court chose not to dismiss, transfer the present action to the United States District Court for the District of Connecticut or the United States District Court for the District of Delaware.

Dated:  June 20, 2018                Respectfully submitted,

                                                             **SMITH, GAMBRELL & RUSSELL, LLP**

*/s/Steven E. Brust*
Steven Brust
Florida Bar No. 832091
Email:  sbrust@sgrlaw.com
Bank of America Tower
50 N. Laura St., Suite 2600
Jacksonville, Florida  32202
Telephone:  904-598-6100
Facsimile:  904-598-6300

And

**KUTAK ROCK LLP**
Sean P. Connolly (*Admitted Pro Hac Vice)*
Email: sean.connolly@kutakrock.com
Jason S. Jackson  (*Admitted Pro Hac Vice)*
Email: jason.jackson@kutakrock.com
1650 Farnam St.
The Omaha Building
Omaha, Nebraska 68102
Telephone: 402-346-6000
Facsimile: 402-346-1148

## CERTIFICATE OF SERVICE

    I CERTIFY that on June 20, 2018, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

                                                     */s/ Steven E Brust*
                                                     Steven E. Brust